MUSKOGEE ELECTRIC TRACTION COMPANY *v.* MYERS.

4-6392                                     151 S. W. 2d 984

Opinion delivered June 2, 1941.

*Nathan A. Gibson* and *Edgar L. Matlock,* for appellant.

*C. E. Izard* and *R. S. Wilson,* for appellee.

McHANEY, J. Appellant is an Oklahoma corporation and is a common carrier, operating an electric line of railroad between Fort Gibson and Muskogee, Oklahoma, with its principal place of business in the latter

city. Appellee is a commission merchant of Van Buren, Arkansas.

On each of the days of February 12, 14, and 15, 1940, appellee purchased certain potatoes from one Homer Anderson, d. b. a., Anderson Potato Company, at Muskogee, for which he gave Anderson a check or draft for $212.60, $132 and $162, respectively on his bank in Van Buren. Anderson indorsed said checks or drafts in blank and delivered them to appellant in due course, in payment, as appellant contends, of freight charges due it by Anderson. Appellant promptly deposited said checks or drafts to its account in its bank for collection, but they were returned protested for nonpayment because appellee had stopped payment upon them, although the potatoes were delivered to him on the days of purchase and hauled out by trucks. Demand was made by appellant on him for payment, which was refused, and a separate suit was brought on each check to enforce payment in the municipal court of Van Buren. Appellee admitted he had stopped payment on the checks and alleged that Anderson was indebted to him in a sum equal to or in excess of the total of said checks; that appellant was not an innocent holder thereof in due course, due to the fact that it and Anderson were engaged in a joint venture or partnership in the potato business; that it had full knowledge of the transactions of Anderson and was in fact a party thereto and that Anderson was heavily involved financially and by reason of a working agreement between him and appellant, all potatoes handled by him were delivered to appellant and kept by it on its tracks under its control and all checks made payable to Anderson were immediately indorsed to it to avoid attachments and garnishments against him, thereby enabling him to cheat and defraud his creditors, including appellee and prevent them from collecting their debts and judgments. Trial in the municipal court resulted in a judgment for appellee, and, in apt time an appeal was prosecuted to the circuit court, which again resulted in a verdict and judgment for appellee. This appeal followed.

At the conclusion of all the evidence, appellant requested a directed verdict in its favor on the ground that, under the law and the evidence, it is a holder in due course of the three instruments sued on. The court refused said request, and this assignment is the basis of the principal ground urged here to reverse said judgment.

We think the court erred in refusing this request and in submitting the case to the jury. It is undisputed that appellee, acting through his son and agent, Floyd Myers, bought the potatoes from Anderson in the yards of appellant in Muskogee, actually received them, loaded them in his trucks and hauled them away. Anderson refused to sell to appellee except for cash. The checks given for the purchase price were delivered to Anderson and by him indorsed and delivered to appellant, two of them in the presence of Floyd Myers. The fact that Anderson was indebted to appellee on account of previous transactions created no infirmity in the instruments. Section 10213 of Pope's Digest defines what an infirmity or defect in title in a negotiable instrument is, as follows: "The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as to amount to fraud." Now, these checks were not acquired by Anderson under any of the conditions mentioned in said section, so he had a good title to the checks which were without any infirmity in them. His indorsement and delivery of them to appellant passed his title therein to it, and there was no infirmity in them to take notice of. Section 10217 provides: "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he . . . acquired the title in due course. . . ." Here the burden never shifted because Anderson's title was not defective. Section 10210 defines a holder in due course as one "who has taken the instru-

ment under the following conditions: (1) that it is complete and regular upon its face; (2) . . .; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.'' It appears to us to be undisputed that appellant was a holder of these checks in due course, as defined in said § 10210. That it took same ''in good faith and for value'' was testified to by its general manager, who testified that where a car of potatoes was shipped to Anderson on shipper's order, he had to surrender the bill of lading to appellant in order to get possession of the car; that he would have to go to get it from the bank by paying the draft attached to bill of lading; and that without doing so, he could only enter the car for the purpose of inspection. Anderson put up a guaranty fund with appellant so he could take up bills of lading, starting with enough to pay the freight and take up the bill of lading on one car and increased it to enough to take up four. The witness had no control over Anderson's operations, nor any interest in his business, no share in his profits or losses, and that the only interest appellant had in the Anderson Potato Company was to collect the freight charges and the bills of lading on cars of potatoes. So the fact that it took the checks in good faith and for value is established.

This evidence is undisputed and there is no basis for the assumption that appellant was a partner with Anderson. The fact that all checks given Anderson in payment for potatoes were indorsed to appellant, is explained, if explanation is necessary or relevant, by the fact that he had to keep his guaranty fund up to a sufficient amount to pay for four cars of potatoes and the freight thereon, in order to be able to surrender bills of lading and get possession of the cars of potatoes. Nor is the fact that some officer or employee of appellant kept the keys to the cars until the surrender of the bills of lading indicative of an interest in or control over Anderson's business. On the contrary it was for appellant's protection. The statement made by an officer of appellant that it was making about $23 per car on Ander-

son's business is explained by the fact that he had reference to the freight charges. But, assuming that appellant was interested in Anderson's business other than as a carrier, we think this fact would not alter the situation nor justify appellee in stopping payment on these checks so as to afford him an offset of a debt due him by Anderson alone.

We are, therefore, of the opinion that the court erred in refusing to direct a verdict for appellant at its request because it was a holder of the checks in due course. The judgment will be reversed and judgment will be entered here for the amount of said checks, protest fees and interest thereon at six per cent. per annum from the dates of protest, the first having been protested on February 17, 1940, and the other two on February 19, 1940, and all costs.